Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a veteran, was discharged for cause from his position as an Internal Revenue Agent. He does not contest the merits of the charges which were presented against him but asserts procedural irregularity.
This case arises on defendant’s motion for summary judgment and plaintiff’s cross-motion.
The facts, as agreed upon by plaintiff and defendant, are as follows: On February 14, 1958, plaintiff, a veteran, was employed in defendant’s service as an Internal Revenue Agent (Excise) Civil Service Grade GS-11. On that date he was presented with the following notice of proposed adverse action from the Regional Commissioner, Chicago Region, Internal Revenue Service:
This letter constitutes a notice of proposed adverse action in accordance with Section 14 of the Veterans’ Preference Act of 1944. It is proposed, in order to promote the efficiency of the Internal Revenue Service, to remove you from the Service in not less than thirty (30) calendar days after the date you receive this notice, or otherwise discipline you, for the following reasons:
Charge I: Immoral conduct in violation of Sections 2.106(a) (3) and 9.101(a) of the Civil Service Regulations, and Section 944.20, subparagraph 3, State of Wisconsin Statutes of 1955, effective July 1,1956.

Specification 1:

On January 17,18 and 19,1958 you were given an assignment in Tomah, Wisconsin. Registry records of the Toma Motel, Tomah, Wisconsin show that you registered for double accomodations at this motel for the night of January 17, 1958, signed the registry Mr. and Mrs. F. J. Putschoegl, Federal Building, Milwaukee, Wisconsin, that you occupied Room 15, and that you paid the $6.0'0 rate for two persons. The automobile license number on this *67 registry record appears as K-42-864. According to the directory of Motor Vehicle Registrations, State of Wisconsin, License K-42-864 is held by Mrs. Ruth LaBlonde, 1030 South Main Street, Rice Lake, Wisconsin.
During an interview on February 3, 1958 you stated under oath that when you learned of your assignment to work in the Tomah and Eau Claire areas, you telephoned Mrs. LaBlonde at her home in Rice Lake, Wisconsin, told her of your assignment, and that she drove to Tomah and met you there. You also admitted during this interview that you had registered as man and wife with Mrs. LaBlonde, at the Toma Motel on the night of January 17,1958.
/Specification # :
Registry records of the Park Motel, Tomah, Wisconsin show that you registered for double accom-odations at this motel for the nights of January 18 and 19, 1958, that you occupied Room 7, and that you paid the $6.00 rate for two persons for each of these nights. The registry record also identifies the occupants’ automobile as a 1957 Oldsmobile.
During an interview on February 3, 1958 you admitted under oath that you had registered at the Park Motel with Mrs. LaBlonde on these two nights.
Charge II: Falsification of daily reports in violation of Section 19, Rules of Conduct, March 1952 edition, and Title 18, Section 1001, United States Code.

Specification 1:

Daily report which you prepared and submitted for January 20, 1958 shows the following:
8:15-10:15_Kelly’s Tomah
10:15-2:30_Travel to Eau Olaire
2:30-5:00_IRS Office — Eau Olaire
In the section of this daily report reading “Tomorrow I plan to be engaged at the following places” you show:
(a) In the light of information received that Kelly’s was not open during the hours of 8:15 and 10:15 a.m. on January 20, 1958, and also that you left the Park Motel, Tomah, Wisconsin, at approximately 9:00 a.m. on this day in the company of Mrs. LaBlonde, in her automobile, tills entry is considered false.
*68 (b) Since yon left Tomab, Wisconsin at 9:00 a.m. on this day, yonr second entry showing travel to Eau Claire, Wisconsin from 10:15 to 2:30 is considered false.
(c) Your third entry showing 2:30 to 5:00 IES Office — Eau Claire is considered false since information developed by the investigation indicates that you did not contact the Internal Eevenue Service Office at anytime on this day.

Specification 2:

In your daily report for January 21, 1958 you show from 8:15 to 5:00 you were making an examination of the Eau Claire Transportation, Eau Claire, and that on the following day you would be engaged at the LaCrosse Transportation whereas, information received shows that you did not visit the Eau Claire Transportation Company on January 21, 1958 but rather telephoned on this day to cancel your appointment and arrange for another appointment on the following day, January 22,1958. Information was also developed that you telephoned the Eau Claire Transportation Company on January 21, 1958 from Eice Lake, Wisconsin.
Luring an interview on February 3,1958 you admitted under oath that you did not go to the Eau Claire Transportation Company on this day.

Specification 3:

In your daily report for January 23, 1958 you show that from 12:00 to 5:00 you were working on a survey of Lake Hallie, Chippewa Falls whereas, during an interview on February 3, 1958 you stated under oath that after finding the Lake Hallie dance hall closed, you went to the public library and spent the afternoon checking newspapers for advertising inserted by night clubs.
Specification J/
In your daily report for Sunday, January 26, 1958 you show that from 8:00 to 10:00 you were working on a survey of Lake Hallie whereas, during an interview on February 3, 1958 you stated under oath that you had gone to Lake Hallie and found it closed, but stayed there for two hours because you thought it would open up.
According to information received, you contacted Mr. Kenneth Clark Hughes, owner of the Lake *69 Hallie Ballroom on Saturday evening, January 25, 1958 at which time an appointment was made to see Mr. Hughes on Monday, January 27, 1958 at 1:00 p.m. During an interview on February 3, 1958 you admitted under oath that you had contacted Mr. Hughes on Saturday evening, January 25, 1958 and arranged for an appointment on January 27,1958.

/Specification 5:

In your daily report for January 27, 1958 you show that from 8:15 to 3:00 you were working on the examination of Lake Hallie at Eau Claire, and that you were with Mr. Kenneth Clark Hughes, owner of the Lake Hallie Ballroom, from 12:00 to 3:00 p.m. whereas, information was received that you contacted Mr. Hughes at about 1:00 p.m. and that you were together for approximately 45 minutes.

Specification 6:

In your daily reports for January 17, 18 and 19, 1958 you showed 14 miles on January 17, 28 miles on January 18, and 14 miles on January 19, representing mileage travelled from Tomah, Wisconsin to Kelly’s Night Club, whereas information developed by the investigation shows that during these three days you made the trips to and from Kelly’s Night Club, in the company of Mrs. Kuth LaBlonde, ana in her automobile. Information also developed by the investigation indicates that your automobile, described as a two-tone blue 1955 Oldsmobile, was observed by reliable witnesses parked at the North Star Cafe and Texaco Filling Station, Junction of Highways 21 and 12, about three miles north of Tomah, Wisconsin, for the entire weekend of January 17, 18, and 19,1958.
Chaegb III: Failure to comply with instructions.

Specification 1:

According to information received from your supervisor, you were given the following assignments in the Eau Claire area to be worked during the week of January 20 through 24, inclusive:
Eau Claire Transit Co. LaCrosse Transit Co.
218 So. Barstow 218 So. Barstow
Eau Claire, Wisconsin Eau Claire, Wisconsin
Diesel Fuel Tax Diesel Fuel Tax
*70 Frank Magadance
South Farrell Street
Eau Claire, Wisconsin
Retailers Tax
_ The following additional assignments were also given to you to be worked to insure that you had sufficient work in the area to keep you busy in the event you were able to complete your other assignments, and to make your trip to Eau Claire worthwhile :
Briggs Trans. Co. Theo. Waterman Co.
910 Broadway St. 119-123 Bridge St.
Eau Claire, Wisconsin Chippewa Falls,
Transportation Tax Wisconsin Retailers Tax
Despite these instructions, you took it upon yourself to conduct cabaret surveys of Lake Hallie, Wagner Lanes, and Floyd Pooler on January 23, 24, 25, 26 and 27,1958.
At no time prior to this trip were you given instructions, or authorized to conduct any cabaret survey work, other than to make inquiry of Internal Revenue Service field personnel concerning prospective surveys. Detailed instructions concerning cabaret surveys were issued to you by memorandum dated January 31, 1957 from your Group Supervisor, and also by memorandum addressed to all Agents dated April 11,1956 from the Acting Group Supervisor. During an interview on February 3, 1958 you stated under oath that you were familiar with these instructions, and attributed your working these surveys to a misunderstanding on your part.
You have a right to reply personally and in writing within seven (7) calendar days after the date of receipt of this letter showing cause, if any, why you should not be removed from the Service or otherwise disciplined. Such reply as you may care to make, accompanied by affidavits, if there should be any you care to submit, should be addressed to the undersigned. Full consideration will be given your reply and written decision of the action to be taken will be communicated to you.
Pending decision in your case, you will remain in an active duty and pay status.
On February 19, 1958, plaintiff wrote to the Regional Commissioner:
*71 The letter proposing adverse action against me in accordance with Section 14 of the Veterans Preference Act of 1944 has been received on February 17, 1958 requesting a reply, personally and in writing within (7) seven days. Inasmuch as the preferred charges haye occurred in various remote areas it will take considerable time to secure the necessary information relative to the charges. It is, therefore, respectfully requested that an extension of time be granted in order to secure and compile the necessary information. At this time it is believed that this cannot possibly be accomplished prior to March 7, 1958. Thanking you in advance for any courtesies extended.
Pursuant to this request plaintiff was given until March 7 to reply. On or about March 3, plaintiff replied in writing by furnishing to the Service the following affidavit:
State of Wisconsin] Milwaukee County!
SS
I,FEANK PUTSCHOEGL, being duly sworn, on oath depose and say the following:
1. That I have not at any time violated Sec. 944.20 (3) Wisconsin Statutes of 1955, effective July 1, 1956.
(A) That I never openly or otherwise cohabited with a person known as Mrs. La Blonde.
(B) That I have never had intimate relations with Mrs. La Blonde, nor have I ever kissed her.
(C) That Mrs. La Blonde and I have never spent the same night in the same abode.
2. That I never committed any of the acts specified in Sec. 2.106(A) (3) of the Civil Service Begulations, i.e., criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct, and that therefore the provision [sic] of Sec. 9.101(A) of the Civil Service Eegulations are inapplicable.
3. That Mrs. La Blonde and I have been friends for more than three (3) years.
4. That Mrs. La Blonde is the owner of a motel at Eice Lake, Wisconsin.
5. That during the time of our friendship Mrs. La Blonde mentioned to me that she was interested in investing in another motel or rest home in the Tomah Area because she thought it had good potential.
6. That knowing this I phoned her to let her know that I was going to be in the Tomah Area during the period under consideration in an Internal Eevenue Service letter dated February 14,1958. That although I did *72 tell ber I would be there on business in connection with my employment, I never disclosed to her the nature of my assignment.
7. That while Mrs. La Blonde and I were in the Tomah Area she slept and roomed at another abode in the city of Tomah, and not the motels in which I resided.
8. That the reason I changed motels in the city of Tomah after the first night was so that John Havey, another Bevenue Agent assigned to Tomah from the Milwaukee Office, and I would be at the same motel.
9. That while the registrys of the particular motels mentioned in the above stated letter showed “Mr. and Mrs. Frank Putschoegl” I did not spend any night together with her in the motel, nor did I cohabit or have any intimate relations with her at any time. That the registrys so indicated only so that Mrs. La Blonde could have free access to the room without embarrassment, this hospitality being no more or no less than what other friends would do when both are away from their regular homes.
10. That the window shades and drapes were never drawn while Mrs. La Blonde and I were in the rooms at the same time, and that the doors were never locked.
11. That Mrs. La Blonde was never advised nor did she consent that I sign the register as husband and wife.
12. That as my car was not operating properly Mrs. La Blonde permitted me to use her car.
13. That I would call for her in the morning or she would walk over to the motel, and later I would return her to her separate abode in the evening, and I would take her car with me to the motel where I was residing.
14. That I did not leave the motel with Mrs. La Blonde on January 20, 1958, but that I called for her at her abode and she drove with me to where my car -was parked and I got out, took my luggage, got into my own car, and drove off for Eau Claire, Wisconsin.
On March 7, 1958, plaintiff replied orally to the charges at a conference held in the Begional personnel office. Plaintiff was also represented at the conference by his present counsel. The Begional Commissioner was represented by the Employee Counselor of the Begional personnel office. A reporter who was present made a transcript of the conference.
On or about March 13 plaintiff submitted the following additional affidavit:
*73 State op WISCONSIN] Milwaukee CouNTY I
SS
I,Frank Putschoegl, being duly sworn on oath, depose and. say the following with reference to charges made against me in a letter from the Internal Revenue Service, signed N. B. Eshleman, Regional Commissioner, dated February 14, 1958:
1. That in a personal conversation between John Havey and me on Monday, March 10,1958, John Havey admitted to me that with regard to Charge I in the above mentioned letter he “assumed” that Ruth La Blonde and I occupied the same motel room on the dates in question, but that he did not know this to be the real or actual fact.
2. That in addition to the statement on page 11 of “Transcript of Proceedings, In Re: Frank J. Putschoegl, Milwaukee, Wisconsin, dated March 7.1958,” and signed by me March 13, 1958, relative to Charge II, Specification 2, I also reviewed all returns, claims, and the law relative to situations where 60% or more of transport companies income is derived from city service.
3. That in addition to my statement set forth on page 12 of the aforementioned “Transcript” with reference to Charge II, Specification 3, that the advertising in the newspapers was researched specifically with regard to the Lake Hallie case and that at the same time I made a transcript of advertisements of other similar places which could be used in connection with examinations.
4. That all mileage ever claimed by me was in fact-traveled in connection with my employment.
5. That John Havey and I had planned to meet at Kelly’s Night Club at pre-arranged times; that immediately preceding the appointed hour I was not on Government time nor was any time claimed; that on one or two times immediately preceding the appointed hour, and while I was on my own time, Mrs. La Blonde and I were driving through the area; that I did suggest we go to Kelly’s Night Club at the time John Havey and I appointed; that I did not then, or ever, disclose to her that I was on official business; that the proprietor of Kelly’s Night Club was not aware that I was observing the operations in connection with my employment, and did not know that the woman and I were other than ordinary patrons; that Mrs. Kelly in fact remarked to us and pointed John Havey out as a government man examining her operations; that she was not aware of any connection between John Havey and me; that John *74 Havey would leave the room intermittently or have left the premises entirely; that during the time John Havey was not present I observed Mrs. Kelly tampering with the register and committing other questionable acts; that I later conveyed this information to John Havey.
6. That I deny each and every charge and specification as contained in the aforementioned letter dated February 14, 1958, inadvertently not answered in the aforementioned “Transcript” or not specifically denied.
On March 19, 1958, plaintiff was advised he was to be separated from the Service by the following letter from the-Regional Commissioner:
Under date of February 14, 1958, you were notified in writing of your proposed removal from the Internal Revenue Service based upon charges specified in the notice, numbered I, II, and III.
After careful consideration of your written and oral reply of March 7, 1958, and an additional affidavit submitted on March 13, 1958, it has been decided that charges numbered I, II, and III are supported by substantial evidence and are sustained.
This letter, therefore, constitutes an official notice of your removal from the Service effective at the close of business March 21, 1958 in order to promote the efficiency of the Service.
As a veteran preference eligible, yon have the right to appeal this action to the Director, Seventh Civil Service Region, New Post Office Building, Chicago 7, Illinois, within ten (10) calendar days after the effective date of the action.
Under the provisions of Treasury Department Personnel Circular No. 189, Revised, dated September 27, 1957, you also have the right to appeal this decision to the Commissioner of Internal Revenue. However, if you elect to appeal to the Civil Service Commission under the Veterans Preference Act of 1944, you will not be permitted to exercise your appeal to the Commissioner of Internal Revenue. Should you decide to appeal this action in accordance with the provisions of Treasury Department Personnel Circular No. 189, Revised, your appeal should be made within ten (10) calendar days following your receipt of this notification, addressed to the Commissioner of Internal Revenue, Washington 25, D.C., and forwarded through this office.
Plaintiff was accordingly separated from the Service on March 21, 1958. Pie appealed this action to the Seventh *75 U.S. Civil Service Eegion on March 28. A hearing thereon was held on April 30 at which plaintiff, represented by his present counsel, testified. On May 19, 1958, the Seventh Ee-gion sustained Charges I and III, but not Charge II, of the charges preferred against plaintiff and concluded that his separation was for such cause as would promote the efficiency of the Service.
Plaintiff appealed to the Civil Service Commission’s Board of Appeals and Eeview. The Board affirmed the decision of the Seventh Eegion except that it sustained two specifications (Numbers 2 and 6 under Charge II) which the Eegion had not, and found that plaintiff’s removal was for such cause as would promote the efficiency of the Service.
The decision of the Board is dated February 4, 1959. Plaintiff filed his claim in this Court on May 22,1961.
Plaintiff’s petition contains several charges of irregularity which will be treated separately.
First, plaintiff complains that on February 3, 1958 (some 11 days before the notice of proposed adverse action was issued) members of the Inspection Service of the Agency agreed that all of the contents included on a tape recording of their conversations with him would be furnished him and that this was never done.
Apparently what plaintiff alleges regarding the tape is true. Our only concern here is whether plaintiff was in any way prejudiced by the defendant’s failure to furnish this material. We think not. First, the affidavits of Inspectors Gebhart, Miller and Am, attached to defendant’s motion, show that the reason defendant did not furnish a transcript of the tape was that, due to shortage of clerical help, the tape was never transcribed. We see no prejudice from the defendant’s failure to transcribe the tape. If its contents was of no help to the plaintiff, neither was it of help to the Government for it was never used. In any event, the recording was of plaintiff’s own statements, not statements of others. Plaintiff knew, or should have known, what statements he made and therefore could not have been prejudiced by defendant’s failure to furnish him a transcript.
Next, in his petition plaintiff claims that he was denied the right to answer the charges personally. This is com *76 pletely refuted by the transcript of proceedings relative to conferences beld between plaintiff, his attorney Mr. Gad, and one Michael T. Matara, Employee Counselor, Regional Personnel Branch of the Internal Revenue Service, which is filed as an exhibit to defendant’s motion. The exhibit is a narration of a personal interview between the Employee Counselor, plaintiff, and his attorney.
Plaintiff says that “he was denied the right to answer personally to the administrative officer making the adverse decision.” The short answer to this contention is that he had no such right. In O'Brien v. United States, 151 Ct. Cl. 392, 396-397, 284 F. 2d 692, 695, this court said:
We do not think that the statute guarantees a veteran an interview with any particular official as long as he is given the opportunity to present such appeals as he may wish to make to a superior who has the authority to either recommend or take final action.
Beyond question, plaintiff was offered the right to appeal to the Commissioner of Internal Revenue, and beyond question the Commissioner had the authority to recommend or take final action in plaintiff’s case.
Plaintiff then complains that he was never permitted to look at the agency’s “Schedule of Penalties and Disciplinary Action Procedure.”
This schedule is probably not pertinent to plaintiff’s case because it was rescinded some eight days before plaintiff was advised he would be discharged. However, assuming the same or another schedule was in effect at the time, the manual in question set forth certain procedures, i.e., notice of proposed adverse action (which plaintiff received) ; written or oral reply (plaintiff had a personal interview in which he made reply); notice of final decision (which plaintiff received); notice of right to appeal to either the Civil Service Commission or the Commissioner of Internal Revenue (plaintiff was so notified in writing); and finally review by the Treasury. Respecting plaintiff’s right to review by the Treasury, the manual clearly discloses that this avenue is open only when the employee is dissatisfied with the decision of the Commissioner of Internal Revenue. Plaintiff did not choose this route. Instead he chose to appeal to the *77 Civil Service Commission in spite of the fact that he was informed of his right to appeal to either the Civil Service Commission or the Commissioner of Internal Revenue. As shown by plaintiff’s exhibits 4, 6, 7, 8, and 9, it was only after plaintiff appealed to the Civil Service Commission (March 28, 1958) that he requested any documents from the Internal Revenue Service either through the Civil Service Investigator or by letter to the Chicago Regional Office of the Internal Revenue Service.
Plaintiff seems to argue that had the manual been available to him, he would have known of his right to review by the Treasury and might have elected that approach rather than appeal to the Civil Service Commission.
As a matter of fact, plaintiff’s counsel was informed that the manual containing the schedule of penalties was available for inspection. The petition alleges that prior to March 7,1958 (approximately one week prior to the date of proposed removal) plaintiff was informed that in the event of adverse action by the Internal Revenue Service, the Civil Service Commission would get the manual for plaintiff. Later, after adverse action by the Internal Revenue Service, plaintiff was informed that the manual was available either in Chicago (where the Civil Service hearing was to be held) or in Milwaukee (where plaintiff’s counsel resided). Therefore, it was available to plaintiff. Furthermore, plaintiff has not explained how he was damaged by failure to inspect the manual at a previous time. Since he did appeal to the Civil Service Commission, and since that agency is set up by Congress and clothed with authority to pass on removals such as is present here, and since plaintiff has not shown damage because of defendant’s failure to make the manual available earlier, we think plaintiff was given all rights required by law and regulation.
In conclusion, we find no procedural irregularities, and since the merits of the Civil Service Commission’s decision are not contested, plaintiff is not entitled to recover. Defendant’s motion for summary judgment is granted, plaintiff’s cross-motion is denied, and the petition is dismissed.[1]

 Defendant raises the issue of laches respecting plaintiff’s claim. However, in view of the above decision, it is unnecessary to pass on this point.